# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2890-19

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

C.M.,

 Defendant-Appellant.

_____

> Argued September 27, 2021 – Decided October 15, 2021
>
> Before Judges Sumners and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Accusation No. 19-11-0614.
>
> Melissa Rosenblum argued the cause for appellant.
>
> Gretchen A. Pickering, Senior Assistant Prosecutor, argued the cause for respondent (Jeffrey H. Sutherland, Cape May County Prosecutor, attorney; Gretchen A. Pickering, on the brief).

PER CURIAM

Defendant C.M.[1] appeals the denial of his motion to withdraw his guilty plea to first-degree aggravated sexual assault against eight-year-old M.R., N.J.S.A. 2C:14-2(a)(1), second-degree endangering the welfare of a child against eleven-year-old J.R., N.J.S.A. 2C:24-4(a)(1), and second-degree sexual assault by coercion against twenty-year-old mentally incapacitated C.S. N.J.S.A. 2C:14-2(c)(1). He contends:

> POINT I
>
> THE TRIAL COURT ABUSED ITS DISCRETION WHEN DENYING DEFENDANT['S] [] MOTION TO WITHDRAW HIS GUILTY PLEAS PURSUANT TO R[ULE] 3:9-3[(e)]AND SLATER.[2]
>
> POINT II
>
> DEFENDANT['S] [] PLEA SHOULD HAVE BEEN VACATED BECAUSE THE FACTUAL BASIS WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR AGGRAVATED SEXUAL ASSAULT, SEXUAL ASSAULT, AND ENDANGERING THE WELFARE OF A CHILD.
>
> POINT III
>
> DEFENDANT [] PLEADED GUILTY WITHOUT BEING INFORMED OF THE EFFECT OF

---

[1] We use initials to protect the privacy and preserve the confidentiality of the victims and this proceeding. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

[2] State v. Slater, 198 N.J. 145 (2009).

A-2890-19

DEPORTATION RAMIFICATIONS ON HIS MEGAN'S LAW[3] AND PAROLE SUPERVISION FOR LIFE REQUIREMENTS.

We affirm substantially for the reasons expressed by Judge Bernard E. DeLury, Jr. in his thorough and thoughtful oral opinion.

I

An investigation was conducted by the Cape May County Prosecutor's Office regarding allegations of sexual abuse by defendant against M.R., J.R., and C.S. Defendant was subsequently charged with first-degree aggravated sexual assault against M.R.; second-degree endangering the welfare of a child, M.R., N.J.S.A. 2C:24-4(a)(1); second-degree sexual assault, M.R., N.J.S.A. 2C:14-2(b); second-degree sexual assault, J.R., N.J.S.A. 2C:14-2(b); two counts of second-degree endangering the welfare of a child against J.R.; first-degree aggravated sexual assault upon a victim whom defendant knew was mentally incapacitated, C.S., N.J.S.A. 2C:14-2(a)(7); and second-degree sexual assault against C.S.

Two months later, defendant waived his right to indictment by a grand jury and pled guilty to the charges of first-degree aggravated sexual assault against M.R., second-degree endangering the welfare of a child against J.R., and

---

[3] N.J.S.A. 2C:7-1 to -11.

A-2890-19

second-degree sexual assault against C.S.  At the plea hearing, Judge Michael J.

Donahue questioned defendant concerning his status as a legal resident and the

immigration consequences that would flow from a guilty plea:

> [THE JUDGE]: Are you a citizen of the United States?
>
> [DEFENDANT]: No.
>
> [THE JUDGE]: Now you have some residency status apparently?
>
> [DEFENDANT]: Yes.
>
> [THE JUDGE]: You understand that by entering these guilty pleas you may subject yourself to deportation from the United States[?]
>
> [DEFENDANT]: Yes.
>
> [THE JUDGE]: You also have the right to speak to an attorney about your immigration consequences and you've already done that; is that right?
>
> [DEFENDANT]: Yes.

Defense counsel explained defendant was a legal resident and defendant

understood his status would not be renewed as a result of the guilty pleas and

ensuing incarceration.  Counsel then stated:

> The likely outcome will be that when this case is over . . . at such time as when he's paroled[,] he will be taken into I[mmigration and] C[ustoms] E[nforcement] custody and scheduled for deportation because he will

4

A-2890-19

not have his legal resident alien status renewed, and he is aware of that.

After the judge asked defendant if he understood deportation was a likely consequence and whether he wanted to proceed with the guilty pleas, defendant responded "[y]es."

The hearing was then delayed because defendant advised the judge he did not have the assistance of the interpreter when he completed the plea forms. The hearing continued after an interpreter assisted defendant with the plea forms.

The judge then explained the requirements in the supplemental plea forms:

> [THE JUDGE]: You have a couple of supplemental plea forms related to the sexually related charges. First of all, you will be subject at some point if you, when you are released from prison at some point, to what's called Megan's Law registration. That means at the very least you will have to register your address with local law enforcement. You could have to have your information posted online. You might have to notify various entities in the neighborhood or even the neighbors themselves. Do you understand all that, sir?
>
> [DEFENDANT]: Yes.
>
> [THE JUDGE]: You understand if you don't comply with those requirements you may face new criminal charges[?]
>
> [DEFENDANT]: Yes.
>
> [THE JUDGE]: Also, you'll be subject to parole supervision for life [(PSL)] where parole would set

5

certain conditions. If you did not comply with those conditions, again, you could be subject to new criminal charges, you could face parole violation and more time in state prison. Do you understand all that, sir?

[DEFENDANT]: Yes.

[THE JUDGE]: You have to submit for what's referred to as an Avenel[4] evaluation to see if you qualify for a certain type of sentencing which would include spending time in a state treatment facility. Do you understand that?

[DEFENDANT]: Yes.

[THE JUDGE]: It's also possible if you pursue that type of treatment that at the end of the time frame the State could move for what's called a civil commitment to keep you in the facility for a longer period of time. Do you understand all that, sir?

[DEFENDANT]: Yes.

[THE JUDGE]: Do you have any questions about those things?

[DEFENDANT]: No.

---

4   Under the Sex Offender Act, N.J.S.A. 2C:47-1 to -7, a defendant can be sentenced to the Adult Diagnostic and Treatment Center at Avenel, if the judge is persuaded by a preponderance of the evidence that the defendant's conduct was characterized by a pattern of repetitive, compulsive behavior. State v. Howard, 110 N.J. 113, 126-131 (1988). See Annotation, "Standard of Proof Required Under Statute Providing for Commitment of Sexual Offenders or Sexual Psychopaths," 96 A.L.R. 3d 840.

Defendant gave the following factual basis for his pleas:

> [DEFENSE COUNSEL]: Mr. [M.], do you know a juvenile who goes by the initials of M.R. . . . ?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And in fact, this is your wife's granddaughter, correct?
>
> [DEFENDANT]: Yes.
>
>     . . . .
>
> [DEFENSE COUNSEL]: And you would agree that between the months of May and August 2017 when M.R. was staying at [your] house you digitally penetrated her anus with your finger[?]
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And you knew at the time that she was six years old[?]
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And you knew . . . that was against the law[?]
>
> [DEFENDANT]: Yes.
>
>     . . . .
>
> [DEFENSE COUNSEL]: Mr. [M.], during the summer of . . . 2019, were you entrusted with the care of children when other people in your immediate family were working on the weekends?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And included in the children that you were in charge of babysitting or watching was J.R., correct?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And at the time, specifically on August 10[,] . . . [2019], J.R. was eleven years old, correct?

[DEFENDANT]:  Yes.

     . . . .

[DEFENSE COUNSEL]: And in fact, while in your care on that weekend on August 10th you massaged or rubbed J.R. including fondling her breasts, correct?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And you did this directly on the skin[?]  In other words, there was no clothing in between your hands and her breasts[?]

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And when you did this you understood that this was not just simply massaging but touching J.R. in a sexual nature[?]

[DEFENDANT]:  Yes.

[DEFENSE COUNSEL]: And you understand that in so doing you were endangering J.R.'s welfare by exposing her to inappropriate sexual contact[?]

A-2890-19

[DEFENDANT]: Yes.

. . . .

[THE JUDGE]: [D]o you agree that by touching the child in a sexual manner such as this that that would impair or debauch the morals of the child?

[DEFENDANT]: Yes.

. . . .

[DEFENSE COUNSEL]: [Do] [y]ou know who C.S. is?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: C.S. is, in fact, your wife's daughter, correct?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And even though C.S. is twenty years old you know that she suffers from mental incapacity, correct?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And . . . in the month of August of 2019, you were involved in a sexual relationship with C.S.[?]

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: More specifically, the nature of this sexual relationship was that you would have sexual intercourse with her[?]

[DEFENDANT]: Yes.

 A-2890-19

[DEFENSE COUNSEL]: And as part of this relationship[,] you would, shall we say[,] coerce or entice her into having sex with you by buying her gifts, notably fidget spinners[?]

[DEFENDANT]: Yes.

. . . .

[DEFENSE COUNSEL]: C.S. has the mental capacity of a child; is that not true?

[DEFENDANT]: Yes.

. . . .

[THE JUDGE]: Mr. [M.], would you agree that given C.S.'s mental limitations that you offering her gifts and convincing her essentially to have sex with you[,] that you . . . coerced[,] made her have sex with you essentially by offering her these gifts?

[DEFENDANT]: Yes.

Defendant acknowledged he was pleading guilty because he was guilty. Defendant confirmed he wanted to be sentenced in accordance the State's recommendation in the plea agreement to concurrent sentences of twenty-three years with a fifteen-year period of parole ineligibility for first-degree aggravated assault;[5] eight years for second-degree endangering a child; and eight years

---

[5] The sentence was a downward departure in accordance with the Lunsford Act, N.J.S.A. 2C:14-2(a).

subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for second-degree sexual assault. Judge Donohue accepted defendant's plea.

About a month later, defendant filed a motion to withdraw his guilty pleas before he was sentenced. Judge DeLury denied the motion and sentenced defendant in accordance with the plea agreement.

## II

Before sentencing, a judge considering a plea withdrawal motion applies "the interests of justice" standard. R. 3:9-3(e). "Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Accordingly, "courts are to exercise their discretion liberally to allow plea withdrawals" and "[i]n a close case, the 'scales should usually tip in favor of defendant.'" State v. Munroe, 210 N.J. 429, 441 (2012) (second alteration in original) (quoting Slater, 198 N.J. at 156 and State v. Taylor, 80 N.J. 353, 365 (1979)). Nevertheless, the Munroe Court explained that "[l]iberality in exercising discretion does not mean an abdication of all discretion, and, accordingly, any

11

plea-withdrawal motion requires a fact-specific analysis." Id. at 441-42 (internal quotation marks and citations omitted). Thus, we will reverse the trial court's determination of whether to allow a defendant to withdraw a guilty plea "only if there was an abuse of discretion which renders the [trial] court's decision clearly erroneous." Simon, 161 N.J. at 444 (citing State v. Smullen, 118 N.J. 408, 416 (1990)).

A trial court's decision to grant or deny a motion to withdraw a guilty plea is governed by balancing the four Slater factors. See State v. Lipa, 219 N.J. 323, 331-32 (2014). These factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 157-58.

Under the first prong, "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." Id. at 158. A defendant "must present specific, credible facts and, where possible, point to facts in the record that buttress [his] claim." Ibid. A court "should simply consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts." Id. at 159.

The second prong concerns the "the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force." Ibid. "The nature and strength of a defendant's reasons for withdrawal of a plea will necessarily depend on the circumstances peculiar to the case." Munroe, 210 N.J. at 442.

The third prong, involving the presence of a plea bargain, receives the least weight because of the prevalence of plea bargaining to resolve cases. Slater, 198 N.J. at 160-61. The fourth prong considers "whether the passage of time has hampered the State's ability to present important evidence." Id. at 161. "Thus, the trial court must consider the delay to the State in presenting its case to the jury because of the plea-withdrawal motion." Munroe, 210 N.J. at 443. "No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16-17 (2012) (quoting Slater, 198 N.J. at 162).

Guided by these principles, Judge DeLury did not abuse his discretion in denying defendant's motion as his decision is fully supported by his factual findings. The judge determined defendant failed to establish a colorable claim of innocence, the first Slater factor. He reasoned:

> I have carefully considered the submissions of
> the parties, as well as the available discovery at the time

13

of not only [] defendant's detention, but his original plea, and I conclude that his [c]ertification . . . is no more than a bare assertion of innocence, insufficient to justify withdrawal of the plea.

The specificity of [] defendant's statements to police, the total circumstances of the case, the State's evidence, and the allocution afforded at the time of the plea all indicate that there is a credible basis to accept [] defendant's original sworn testimony that he was guilty of the offenses charged, to which he admitted his guilt, and that [] defendant's submissions here today are no more than a bare assertion of innocence . . . .

There are no particular plausible facts that I can glean from his assertions that would support a colorable claim of innocence.

We agree with the judge. Defendant's certification in support of his motion merely asserted he did not penetrate M.R. with his finger, fondle J.R.'s breast, or coerce C.S. to have sex with him. These bare assertions are not supported by any facts in the record, and thus, are woefully short of satisfying the first Slater factor.

With regards to the second Slater factor, the nature and strength of defendant's reason for withdrawal, defendant essentially asserts an ineffective assistance of counsel claim. He contends his trial counsel forced and threatened him to accept the guilty plea, failed to provide him with full discovery and had no opportunity to see the video statements of the alleged victim, and failed to

14

challenge violation of his right to counsel during his police interrogation. The judge rejected this contention, stating:

> I'm convinced that the plea transcript adequately reflects that this defendant had at the time demonstrated to the [c]ourt that he understood what he was doing, that he understood his guilt, and that he was undertaking and accepting his guilt in entering the plea.
>
> . . . .
>
> I am confident that Judge Donahue would not have taken the plea if he was not satisfied by [] defendant's demeanor and candor at the time of the plea, that he was making a knowing, intelligent, and voluntary waiver of his rights and supplying an adequate factual basis.

We agree with the judge. We also add that "[o]ur courts have expressed a general policy against entertaining ineffective[ ]assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). Typically, a "defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice." State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991); see also McDonald, 211 N.J. at 30. Because the record here is not sufficiently developed to consider defendant's ineffective assistance of

counsel claims, we decline to address defendant's claim of ineffective assistance of counsel.

As to the third <u>Slater</u> factor, defendant's plea was a part of a plea bargain. The judge ruled:

> The defendant has had the advantage of a very favorable plea bargain in my judgment. The defendant faced life imprisonment, with a [twenty-five] year parole disqualifier, potential consecutive sentencing on other serious second[-]degree offenses, and indeed, perhaps other offenses that may have been charged by the State had the matter gone to indictment.
> All of that was apparently negotiated and discussed with prior counsel at great length and at great detail, and that gives even greater weight to the existence of a plea bargain in this case, and that weighs against [] defendant's withdrawal of his plea in this case.

We agree with the judge. Defendant did not satisfy his "heavier burden in seeking to withdraw pleas entered as part of a plea bargain." <u>Slater</u>, 198 N.J. at 160 (citing <u>Smullen</u>, 118 N.J. at 416-17; <u>State v. Huntley</u>, 129 N.J. Super. 13, 17 (App. Div. 1974)). Defendant provides no meritorious basis why this factor should not be considered. Thus, the third <u>Slater</u> factor weighs against defendant's request.

Finally, regarding the fourth <u>Slater</u> factor, whether withdrawal would result in unfair prejudice to the State or unfair advantage to defendant, the judge determined the factor weighed against defendant. He reasoned:

> [T]he State's not required to show prejudice if the defendant fails to offer proof of other factors that would support withdrawal of his plea. Only when the defendant has asserted colorable reasons in conjunction with an assertion of innocence should the [c]ourt delve further into the inquiry of unfair prejudice or advantage.
>
> Based on my analysis of the first three factors, which all balance against the defendant being permitted to withdraw his plea, a complete analysis of prejudice or advantage is not necessary.
>
> However, I will state for the record that I have considered unfair prejudice that may attend to the State being put to its proofs now to try this case. We're dealing with very young victims, we're dealing with the passage of time from the allegations under the [i]ndictment until the date of the plea, and indeed, to the date of trial.
>
> Young persons are involved whose memory may diminish over time. Also, we're dealing with a victim who has certain cognitive difficulties, which may impact the ability of that witness to go forward. All of those factors work an unfair prejudice to the State in its prosecution of the case and would give an advantage to this defendant being able to mount a defense in the face of weakening and withering State's proofs.

We agree with the judge. Defendant's contention that there will be no prejudice to the State if his guilty plea is withdrawn because his motion was

17

made shortly after his plea was not supported by "specific, credible facts . . . [outside or] in the record." Slater, 198 N.J. at 158.

Accordingly, the Slater factors were properly weighed by Judge DeLury to deny defendant's motion to withdraw his guilty plea.

III

It is well-established "a defendant may . . . challenge the sufficiency of the factual basis for his guilty plea on direct appeal." State v. Urbina, 221 N.J. 509, 527-28 (2015). The question of whether a defendant's factual admissions established the essential elements of the offense is an issue of law, which we review de novo. See State v. Campfield, 213 N.J. 218, 229-30 (2013).

Before accepting a defendant's guilty plea, the court must determine "by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea." R. 3:9-2. The court "must not accept a guilty plea unless it is satisfied that the defendant is in fact guilty." Lipa, 219 N.J. at 331.

"[I]t is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail." State v. Perez, 220 N.J. 423, 432 (2015) (quoting Campfield, 213 N.J. at 236). The defendant may either "explicitly admit guilt with respect to the elements" or may acknowledge "'facts constituting the essential elements of the crime.'"

18

Campfield, 213 N.J. at 231 (quoting State v. Sainz, 107 N.J. 283, 293 (1987)). The defendant must "acknowledge all of the facts that comprise the essential elements of the offense to which the defendant pleads guilty." Perez, 220 N.J. at 434. Once the court is "satisfied from the lips of the defendant that he committed every element of the crime charged," the court may accept the plea. Id. at 432-33 (internal quotations and citations omitted).

Defendant's plea allocution demonstrated he committed aggravated sexual assault, sexual assault, and endangering the welfare of a child. Defendant voluntarily and knowingly admitted he: digitally penetrated M.R.'s anus with his finger knowing she was six years old at time; rubbed and fondled J.R.'s breasts knowing she was eleven years old at the time; and coerced C.S. to have sex with him by giving her gifts knowing she had the mental limitations of a child.

There is no merit to defendant's argument that he failed to provide a factual basis because he solely answered "yes" to the questions asked of him by his attorney. His colloquy is similar to the defendant's guilty plea in Smullen, where the Court held the use of leading questions to establish a factual basis was sufficient. 118 N.J. at 415. Thus, Judge DeLury correctly determined defendant provided an adequate factual basis for committing the charged offenses against his three victims.

IV

Defendant contends his guilty plea was not knowing, intelligent, and voluntary because he was not advised that if he is deported, he will be opening himself up to third-degree charges for violating Megan's Law and PSL. This contention lacks sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). Suffice to say, the record demonstrates defendant was fully informed his conviction would subject him to Megan's Law requirements and PSL. And, if defendant is deported, he obviously would not be required to satisfy those sentencing conditions while he remains outside of the United States.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2890-19